UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DANIEL WAYNE ASKINS,               )
                                   )
        Plaintiff,                 )
                                   )
                                   )
v.                                 )    No. 1:12-cv-00174-SPM
                                   )
CAROLYN W. COLVIN,[1]              )
Acting Commissioner of Social Security, )
                                   )
        Defendant.                 )

# **JUDGMENT**

In accordance with the Oral Opinion entered on September 6, 2013, a transcript of which is attached hereto,

**IT IS HEREBY ORDERED, ADJUDGED, and DECREED** that under Sentence 4 of 42 U.S.C. § 405(g), the final decision of the defendant Commissioner of Social Security denying disability insurance benefits and supplemental security income benefits to Plaintiff Daniel Wayne Askins is **REVERSED**. This action is remanded to the Defendant for further proceedings consistent with the court's Oral Opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2013.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should therefore be substituted for Michael J. Astrue as the defendant in this case.

1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
 2

 3   DANIEL ASKINS,

 4          Plaintiff,

 5          vs.              Cause No. 1:12cv174 SPM

 6   SOCIAL SECURITY ADMINISTRATION,

 7          Defendant.
     =======================================================
 8                    TRANSCRIPT OF RULING

 9     BEFORE THE HONORABLE SHIRLEY PADMORE MENSAH
                UNITED STATES MAGISTRATE JUDGE
10
                       SEPTEMBER 6, 2013
11   =======================================================
                          APPEARANCES
12
     For Plaintiff:
13
     Ms. Traci L. Severs
14   Dennis W. Fox and Associates
     211 N. Broadway
15   Suite 2400
     St. Louis, MO 63102
16

17   For Defendant:

18   Ms. Jane Shaw
     Ms. Ellie Dorothy
19   Office of U.S. Attorney
     111 S. Tenth Street
20   20th Floor
     St. Louis, MO 63102
21                        Transcribed by:

22       Alison M. Garagnani, CCR #475, CSR, RMR
                    Official Court Reporter
23             United States District Court
              555 Independence, Room 3100
24              Cape Girardeau, MO 63703
                       (573)331-8832
25
         Proceedings Recorded by Electronic Recording
```

1                    (THE PROCEEDINGS BEGAN AT 1:36 P.M.)
2                    THE COURT: Okay. We're back on the
3    record in Askins v Colvin. Over the lunch hour I
4    did go back and reflect on our discussion this
5    morning and on the argument of counsel, and I am
6    prepared to rule at this time.
7                    The following oral opinion is
8    intended to be the opinion of the Court
9    judicially reviewing the denial of Plaintiff
10   Daniel Wayne Askins' application for disability
11   insurance benefits and supplemental security
12   income under the Social Security Act.
13                   The Court has jurisdiction over this
14   matter under 42 U.S.C. Section 405(g) and 1381.
15   The parties have consented to have a United
16   States Magistrate Judge dispose of this case,
17   including entry of final judgment.
18                   I have reviewed and considered the
19   administrative record in its entirety, including
20   the briefs of the Plaintiff and the Commissioner,
21   the transcript of the hearing held before the
22   administrative law judge and the written opinion
23   of the administrative law judge.
24                   The Court has heard oral arguments
25   by counsel on the pleadings of the parties and

```
 1   now issues its ruling in this oral opinion.
 2              By way of background, Plaintiff
 3   Daniel Wayne Askins filed his application for
 4   Title II and Title XVI benefits on September 8th,
 5   2009 claiming he became disabled on January 1,
 6   2006, at age 53.  Plaintiff later amended the
 7   onset date to November 20th, 2009, when he was
 8   age 57.
 9              In his application for benefits
10   Plaintiff, who previously worked as a store
11   clerk, alleged disability due to a heart
12   condition, which caused breathing problems.
13              Plaintiff's application was
14   initially denied, and he requested a hearing
15   before an ALJ.
16              On March 9th, 2011, Plaintiff
17   appeared and testified at a hearing before an
18   ALJ.
19              On April 15th, 2011, the ALJ issued
20   a written decision in which he concluded, as
21   summarized previously by the Court, that
22   notwithstanding a severe impairment of coronary
23   artery disease, Plaintiff retains the residual
24   functional capacity to perform light work as
25   defined in 20 CFR Section 404.1567(b), but is
```

```
 1   limited exertionally to occasionally climbing
 2   stairs, climbing ladders, kneeling, stooping
 3   crouching, crawling and balancing.
 4              The ALJ further found Plaintiff is
 5   capable of performing his past relevant work as a
 6   store clerk, although not in the way Plaintiff
 7   actually performed that work.
 8              As such, the ALJ concluded Plaintiff
 9   was not disabled.
10              Plaintiff's request for Appeals
11   Council review of the ALJ's decision was denied,
12   and the decision of the ALJ stands as the final
13   decision of the Commissioner.
14              In his brief Plaintiff raised two
15   issues for judicial review.  First, Plaintiff
16   contended the hearing decision is not supported
17   by substantial evidence, because the ALJ failed
18   to properly evaluate the opinion of Plaintiff's
19   treating cardiologist Dr. Craft.
20              Plaintiff's second argument was that
21   the hearing decision was not supported by
22   substantial evidence, because the ALJ also failed
23   to properly evaluate the opinion of Nurse
24   Practitioner Corinna DeFrancesco as expressed in
25   a physical residual functional capacity
```

questionnaire completed by Nurse DeFrancesco.

More specifically, the Plaintiff argued the ALJ's failure to even mention the opinion of Nurse DeFrancesco is reversible error and warrants remand.

In oral argument today Plaintiff raised challenges for the first time to the ALJ's credibility determination, past relevant work analysis and the ALJ's evaluation of the opinion of Plaintiff's treating urologist Dr. Miller.

Although it appears that Plaintiff's counsel raised these issues at least to some extent in an effort to respond to arguments raised in the Commissioner's cross brief, I do agree with the Commissioner that it would be unfair for the Court to consider these arguments without giving the Commissioner a full opportunity to respond with supplemental briefing.

However, as it will become evident from my decision today, it's not necessary for the Court to address those issues that were not briefed by Plaintiff in order for me to resolve this case.

As the parties are well aware, the

1   Court's role in reviewing the Commissioner's
2   decision is to determine whether the decision
3   complies with the relevant legal requirements and
4   is supported by substantial evidence in the
5   record as a whole.  Substantial evidence is less
6   than a preponderance but enough that a reasonable
7   mind might accept it as adequate to support a
8   conclusion.
9              In determining whether substantial
10  evidence supports the Commissioner's decision the
11  Court considers both evidence that supports the
12  decision and evidence that detracts from that
13  decision.  However, the Court does not relay the
14  evidence presented to the ALJ, and it defers to
15  the ALJ's determinations regarding the
16  credibility of testimony as long as those
17  determinations are supported by good reasons and
18  substantial evidence.
19              If after reviewing the record the
20  Court finds it possible to draw two inconsistent
21  positions from the evidence, and one of those
22  positions represents the ALJ's findings, the
23  Court must affirm the ALJ's decision.  I've not
24  cited the cases that state those standards.  I
25  know the parties are well aware and familiar

```
 1   probably better than I am of the standards in the
 2   cases that articulate them.
 3              With respect to the Plaintiff's
 4   second argument raised in his brief regarding
 5   Nurse DeFrancesco on June 9th, 2010, Nurse
 6   Practitioner Corinna DeFrancesco -- these are the
 7   facts that go to that argument.  On June 9th,
 8   2010, Nurse Practitioner Corinna DeFrancesco
 9   completed a physical residual functional capacity
10   questionnaire.
11              The record reflects and the parties
12   agree that Nurse DeFrancesco worked with
13   Plaintiff's treating doctor, Dr. Lorna Stookey.
14   The treatment notes of Nurse DeFrancesco were
15   signed by -- co-signed by Dr. Stookey, and some
16   of the notes reflect that Nurse DeFrancesco
17   conferred with either Dr. Stookey or Dr. Craft's
18   office at least on one occasion in her treatment
19   of Plaintiff.
20              Nurse DeFrancesco's assessment,
21   which appears to be based in part on written
22   evaluations of Plaintiff's heart condition by
23   Dr. Craft direct to Dr. Stookey, confirms that
24   Plaintiff was diagnosed with hypertrophic
25   obstructive cardiomyopathy, formerly known as
```

7

1   idiopathic hypertrophic sub-aortic stenosis.  And
2   that condition is referenced in the records as
3   HOCM and IHSS, among other things.
4           Nurse DeFrancesco's assessment notes
5   that Plaintiff's symptoms included chest pain
6   fatigue, shortness of breath and syncope --
7   otherwise known as fainting, I believe.
8           Nurse DeFrancesco opined Plaintiff's
9   impairments had lasted or were expected to last
10  at least 12 months, Plaintiff was not a
11  malingerer, and his impairments were reasonably
12  consistent with his symptoms.
13          The tracking -- much of the language
14  found in Dr. Craft's written evaluations Nurse
15  DeFrancesco opined that Plaintiff had the
16  following functional limitations:  Avoid warm-hot
17  environments and dehydration.  Avoid activity
18  that would create a Valsalvo effect such as
19  holding breath, lifting heavy objects, straining,
20  deep squats or frequent bending over as these
21  could cause sudden death.
22          Apparently, based on these
23  limitations, she then concluded Plaintiff should
24  sit at least six hours in an eight-hour workday,
25  stand or walk about two hours in an eight-hour

1 | workday, never lift 20 pounds and never stoop,
2 | bend, crouch, squat or climb ladders.
3 |     There appears to be no dispute
4 | between the parties that these limitations if
5 | accepted would preclude a finding that Plaintiff
6 | had the residual functional capacity to perform
7 | light work.
8 |     Plaintiff has argued remand is
9 | warranted because the hearing decision doesn't
10 | even mention this opinion by Nurse DeFrancesco.
11 | I agree with that argument.
12 |     As Plaintiff correctly points out in
13 | his brief, evidence that Nurse DeFrancesco worked
14 | with Plaintiff's primary care -- excuse me,
15 | Plaintiff's treating doctor, Lorna Stookey, and
16 | evidence that Dr. Stookey co-signed most of Nurse
17 | DeFrancesco's treatment notes suggests that Nurse
18 | DeFrancesco may have been entitled to
19 | treating-source status.
20 |     Although only acceptable medical
21 | sources can be considered treating sources
22 | pursuant to 20 CFR 404.1502 and a nurse
23 | practitioner ordinarily would not be considered
24 | an acceptable medical source, as Plaintiff points
25 | out in the brief, in <u>Shontos V Barnhart</u> the

1   Eighth Circuit held that if an acceptable medical
2   source oversees the care of patients, then the
3   entire treatment team could have treating-source
4   status.
5              The Commissioner has attempted to
6   distinguish this case -- our present case -- from
7   Shontos by suggesting that the facts here are
8   more in line with the facts of Tindell v.
9   Barnhart in which the Eighth Circuit held the
10  opinion of a licensed social worker who counseled
11  Plaintiff fairly regularly was not entitled to
12  treating-source status.  That argument is not
13  availing.
14             The social worker in Tindell the
15  Eighth Circuit held was not the treating source
16  as defined in the regulations, and more
17  particular to our point here, the Eighth Circuit
18  found that the social worker there was not
19  associated with a physician, psychologist or
20  other acceptable medical source that could
21  potentially give him treating-source status.
22             In light of the relationship between
23  Nurse DeFrancesco and Plaintiff's primary
24  treating doctor and in light of evidence in the
25  record that Nurse DeFrancesco was part of the

```
 1   treatment team to address Plaintiff's heart
 2   condition at a minimum the ALJ should have
 3   considered whether or not Nurse DeFrancesco was
 4   entitled to treating-source status.
 5              Even if Nurse DeFrancesco was not
 6   entitled to treating-source status her opinion
 7   should have been considered by the ALJ.  I don't
 8   think there's any dispute about that in this
 9   case.
10              Social Security Rule 06-03p states
11   that since there is a requirement to consider all
12   relevant evidence in an individual's case record,
13   the case record should reflect the consideration
14   of opinions from medical sources who are not,
15   quote, acceptable medical sources and from
16   nonmedical sources who have seen the claimant in
17   their professional capacity.
18              Although there is a distinction
19   between what an adjudicator must consider and
20   what the adjudicator must explain in the
21   disability determination or decision, the
22   adjudicator generally should explain the weight
23   given to opinions from those -- from these other
24   sources or otherwise ensure that the discussion
25   of the evidence in the determination or decision
```

```
 1   allows a claimant or subsequent reviewer to
 2   follow the adjudicator's reasoning when such
 3   opinions may have an effect on the outcome of the
 4   case.
 5              Here it is not at all clear from the
 6   hearing decision that the ALJ actually considered
 7   Nurse DeFrancesco's assessment, and if so, what
 8   weight, if any, he may have assigned to it.
 9              The Commissioner has acknowledged
10   that Nurse DeFrancesco's opinion should have been
11   considered as an other source, but suggests that
12   the error was harmless.  I disagree.
13              Nurse DeFrancesco's opinion is
14   significant, because it is the only medical
15   opinion in the record that assesses the impact of
16   Plaintiff's heart condition on his ability to
17   function in the workplace.
18              Notwithstanding the Commissioner's
19   argument to the contrary during the hearing, the
20   RFC assessment by the urologist Dr. Miller is not
21   an assessment of what Plaintiff can do or how
22   Plaintiff can function in the workplace despite
23   his heart condition.
24              In addition, the opinion by
25   Plaintiff's cardiologist Dr. Craft that
```

```
 1   Plaintiff's New York Heart Association
 2   classification was Class II is not the equivalent
 3   of an assessment in a disability context or
 4   Plaintiff's ability to function in the workplace
 5   in light of his heart condition.
 6             As noted on the record during oral
 7   argument, there are cases where courts
 8   confronting this issue have held that, while the
 9   New York Heart Association classification may be
10   relevant to determining whether or not an ALJ's
11   RFC determination is supported by substantial
12   evidence, that classification standing alone does
13   not equate to a particular RFC assessment.  And
14   absent assistance from a medical expert an ALJ
15   cannot competently translate a New York Heart
16   Association classification into an actual
17   residual functional capacity assessment.
18             In Lauer v. Apfel the Eighth Circuit
19   held that the ALJ bears the primary
20   responsibility for making the RFC determination
21   and for ensuring that there is some medical
22   evidence regarding the claimant's ability to
23   function in the workplace that supports the RFC
24   determination.  Therefore, the Eighth Circuit has
25   held the ALJ should obtain medical evidence that
```

1  addresses the claimant's ability to function in
2  the workplace.
3      Here, other than Nurse DeFrancesco's
4  assessment, it is unclear to me what medical
5  evidence there is in the record that addresses
6  the claimant's ability to function in the
7  workplace.  And I'm not persuaded that the
8  evidence cited by the Commissioner both in his
9  brief and at oral argument today rises to the
10 level of medical evidence of claimant's ability
11 to function in the workplace.
12     Because the ALJ erred in failing to
13 consider Nurse DeFrancesco's opinion and because
14 a finding -- and that error may have an effect on
15 the outcome of the case, the hearing decision is
16 not supported by substantial evidence, and the
17 Commissioner's decision will be reversed and
18 remanded for further proceedings.
19     On remand the ALJ should consider
20 the opinion of Nurse DeFrancesco and consider
21 whether it should be afforded treating-source
22 status in light of the evidence in the record of
23 her relationship to Dr. Stookey.
24     The ALJ should also consider going
25 back to Dr. Craft for clarification or otherwise

```
 1   enlisting the services of a medical expert who
 2   can assist in determining what functional
 3   limitations as that term is used in the context
 4   of disability insurance benefits might flow from
 5   Dr. Craft's NYHA classification assessment.
 6             I will enter a judgment on this oral
 7   opinion and will order a transcript only of this
 8   segment of the hearing today, the segment that
 9   covers the oral opinions, so the parties have a
10   written memorialization of the Court's reasoning
11   in this case.
12             Nothing further.
13             MS. DOROTHY:  Thank you, Your Honor.
14             THE COURT:  Thank you.
15             (PROCEEDINGS CONCLUDED AT 1:59 P.M.)
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3            I, Alison M. Garagnani, Registered Merit
 4      Reporter, hereby certify that I am a duly
 5      appointed Official Court Reporter of the United
 6      States District Court for the Eastern District of
 7      Missouri.
 8            I further certify that the foregoing is a
 9      true and accurate transcript of the proceedings
10      held in the above-entitled case.  And I further
11      certify that the foregoing pages contain an
12      accurate reproduction from taped proceedings had
13      on that date, transcribed to the best of my
14      ability.
15            I further certify that this transcript
16      contains pages 1 through 16 inclusive and that
17      this reporter takes no responsibility for missing
18      or damaged pages of this transcript when same
19      transcript is copied by any party other than this
20      reporter.
21                  Dated Cape Girardeau, Missouri, this
22      12th day of September, 2013.
23
24      ---------------------------------------------
        /s/Alison M. Garagnani
25      Alison M. Garagnani, CCR, CSR, RMR.
        Official Court Reporter
```